Sam *v.* State, 33 Miss. Rep., 347.

### Arson.

The confessions of a slave made to his master are not privileged communications, and are properly admissible in evidence against him, if made freely and voluntarily, and without any undue influence being exerted to obtain them.

The master, after the arrest of the slave, chained him; and whilst they were together alone, he asked the slave why he had burned the gin-house—assuming, in the form in which he put the question, that the slave was guilty, but used no force to extort the confession; whereupon the slave confessed the burning, and said he had committed the crime because he wished to be hung. *Held:* That the means used to obtain the confession were not improper, and the confession was properly admitted as evidence.

The *corpus delicti* in a case of arson is the burning of the house; and if that fact be established by evidence *aliunde*, the confessions of the accused are admissible to show that the burning was done feloniously, and that he was the criminal agent.

Error to Holmes circuit court. Henry, J.

*J. M. Dyer*, for plaintiff in error.

1. The circuit court erred in admitting the confessions of the prisoner to John A. Durden, his master, that he burnt the gin, to go to the jury. For a master cannot give evidence of the confessions of his slave to him, because, from the relations existing between them, the slave is always presumed to be under the influence and coercion of the master. State v. Charity, 2 Dev., 543; Wheeler on Slavery, 214.

2. The *corpus delicti*, or felonious burning of the gin, was not proven by any other evidence than the confessions of the slave to the master, which, if admissible, were utterly insufficient to establish the fact of the felonious burning. In the United States the prisoner's confession, when the *corpus delicti* is not proved, has been held insufficient for his conviction. 1 Greenl. Ev., 325, § 217; Guild's case, 5 Halst., 163, 185; Long's case, 1 Hayw., 524; 4 Hawk. P. C., 425, book 2, ch. 46, § 36.

The *corpus delicti* in a case of arson does not simply consist in the fact of the burning, for that may have been done by accident, and, therefore, no crime; but it means the felonious or criminal burning of it; and that felonious or criminal burning must be proved otherwise than by the prisoner's confessions. The body of the offense or crime must be established by independent testimony other than the confessions; and the latter

serve, on account of the little weight attached to them, merely
to point out the person who did the deed.    *Vide* authorities
above cited.

*D. C. Glenn*, attorney general.

HANDY, J.:

The plaintiff in error was indicted and convicted in the court
below of burning a gin and cotton-house, contrary to the stat-
ute; and the case is brought here for review upon two grounds
of error.

1st. The master of the slave was offered as a witness in behalf
of the state, and for the purpose of proving confessions by the
prisoner of his guilt.    The witness testified that the prisoner
was taken up about sixty miles from the place where the burn-
ing took place, and two or three days thereafter.    That when
the witness got possession of him, he chained his legs together,
and brought him home in the stage-coach along with him.    That
witness then asked him why he burned the gin-house, and he
replied that he did so because he wished to be hung; and that
witness assumed, in the questions he asked him, that he had
burnt the gin-house, but that no force was used to extort the
confessions, and that the witness knew nothing of his own
knowledge as to how the gin-house was burned, though he
knew the fact that it was burned.    The prisoner objected to the
admission of the statements of the prisoner to his master; but
the objection was overruled and exception taken; and this is
the first ground of error relied on.

It is contended that it is not competent to give evidence of
the confessions of a slave made to his master, because he is
under the constraint of the master; and the confessions cannot
be considered as being made freely and voluntarily, and with-
out some degree of influence arising from the presence of the
master, and obedience to his wishes.

The relation which the slave bears to the master is certainly
one of dependence and obedience; but it is not necessarily one
of constraint and duress.    It is not to be presumed that the
master exercises an undue influence over his slave to induce
him to make confessions tending to convict him of a capital

offense; because, besides the feelings of justice and humanity which would forbid such efforts, it would be against the interest of the master that the slave should make confessions which would forfeit his life; for he would thereby sustain a loss to the amount of one-half of the value of the slave. Nor is it to be presumed that the slave will make confessions to his master tending to convict him of a crime for which he would suffer death, with a view of yielding to the wishes of the master, and when he was aware of the consequences of the commission of the crime; for that would be in opposition to all the promptings of self-preservation—the most powerful of all motives. It is rather to be presumed that he would deny his guilt, relying on the protection of the master, in the absence of inculpatory evidence. For the hope of protection from the master, in consequence of the denial, is a much more natural and reasonable motive, and far more just to the humane feelings of the master, than that of self-sacrifice to the master's cruelty. And the force of this motive is illustrated by the humane conduct which constant experience shows to be exhibited by masters, in the just and reasonable defence of their slaves when charged with the commission of crimes.

Although such confessions should be received with great caution, and excluded where there is anything tending to show that they were induced by fear, or by hopes of favor, or by undue influence of any description, we do not consider them inadmissible where there are no such circumstances shown; and we can perceive no danger in submitting them to be weighed by the jury. Such confessions are not incompetent upon any sound legal principle; and to establish the rule that they are incompetent, would be highly impolitic and dangerous; because, from the nature of the connection between master and slave, if confessions fully made to him should not be admissible, they would not be likely to be made to any others; and thus, however true the confessions, and however strongly corroborated by circumstances, all violations of law committed by slaves the proof of which depended on that sort of evidence, would go unpunished in the courts of justice. And the consequence of this would be, that a disposition would be created to punish slaves otherwise

than according to the rules and restraints of the law, which should operate both in its protection and in its punishments upon them as well as upon the white man.

We, therefore, think that this objection was properly overruled.

2d. It is objected that, as there was no evidence of the felonious burning besides the confessions of the prisoner, his confessions alone were not sufficient to support the indictment, upon the established principle that where the *corpus delicti* is not otherwise proved, the prisoner's confession is not sufficient to warrant his conviction; and it is said that the *corpus delicti* consists in the felonious burning of the gin-house.

The main fact necessary to be established as the basis of the prosecution was, that the house had been burned; for, without that, there could be no guilt in any one. After proof of that fact, it was necessary to prove how it was done, and by whom; and these particulars could be established by any evidence which was competent in law, and sufficient in its force to satisfy the mind. The rule with regard to proof of the *corpus delicti*, apart from the mere confessions of the accused, proceeds upon the reason that the general fact, without which there could be no guilt, either in the accused or in any one else, must be established before any one could be convicted of the perpetration of the alleged criminal act which caused it; as in cases of homicide, the death must be shown; in larceny, it must be proved that the goods were lost by the owner; and in arson, that the house had been burned; for otherwise the accused might be convicted of murder, when the person alleged to be murdered was alive; or of larceny, when the owner had not lost the goods; or of arson, when the house was not burned. But when the general fact is proved, the foundation is laid, and it is competent to show, by any legal and sufficient evidence, how and by whom the act was committed, and that it was done criminally.

Here the burning was proved apart from the prisoner's confessions; and the confessions were, therefore, properly admitted in evidence.

We think that there is no error in the record, and consequently the judgment must be affirmed.