RUFFIN v. STATE.

In Banc. Mar. 14, 1949.

(39 So. (2d) 269)

**E. T. Strange** and **Edwin A. Dunn,** for appellant.

**George H. Ethridge,** Assistant Attorney General, for appellee.

Roberds, J.

Appellant and Areather Cotton were jointly indicted for arson in the burning of a dwelling house, the property of Cotton. A severance was granted, appellant was convicted and sentenced to the state penitentiary for two years. On this appeal he urges, first, that the testimony is insufficient to establish the corpus delicti aliunde his alleged confession, and, second, that the confession was not admissible in evidence because it was not shown to have been made freely and voluntarily.

Whether the State established, aside from the confession, that the fire was of incendiary origin, depends upon the effect of the following combination of proved circumstances, measured by the legal rules in this State for testing the sufficiency, or insufficiency, of the evidence to show that fact.

The fire occurred about 1:40 o'clock on the morning of June 24, 1948. When the Fire Department arrived the house was locked; no one was in it. The firemen broke through a door and succeeded in extinguishing the fire before the house was completely destroyed. The house was burning in two different places. One was in a closet. The other was across a room from the closet and against the wall of that room. That fire had burned through

the wall. Both fires were going at the same time with no apparent connection one with the other.

Upon the ceiling of this closet was a one-gallon jug and also a can, both containing kerosene. The ceiling was of such a height that this jug and can could have been placed thereon by one of ordinary height standing on the floor of the room. Another gallon jug, containing kerosene, was upon the ceiling of an adjoining room, as we understand the evidence. One of the jugs had exploded before the firemen reached the scene. The other exploded while the fire was being put out. Kerosene from one or both of these jugs ran down the walls. One fireman caught some of it in his hand and said he knew it was kerosene. This can and the broken parts of these jugs, both yet containing some kerosene, were introduced in evidence and passed to the jurors for examination.

Appellant, in his confession, admitted that a few days before the fire, at the request of Areather Cotton, he carried from her home to, and left at, a laundry and dry cleaning establishment certain of her personal wearing apparel and household articles. He also said that, at her request, he had taken from her residence to a workshop he operated at his home a radio and cedar chest to be by him repaired. After the fire, he had delivered the radio and chest to the new residence of Cotton. He carried the officers to the laundry and dry cleaning establishments. There they found deposited in the name of Areather Cotton the personal and household articles so left by appellant. They also found the radio and cedar chest at the new residence of Cotton.

The officers further testified that they found in the damaged residence practically no clothing or personal effects—at least, none of any appreciable value. That was also true as to such household articles as linens, bedcovers, etc. Household effects in the house when the fire occurred consisted almost exclusively of heavy furniture, such as beds, springs, etc. From this fact the State

reasons that personal clothing and things of that nature had been removed purposely in preparation for the fire.

It is further shown that Areather was carrying $1,000 fire insurance on the residence, payable to Bessie Williams, as mortgagee, to whom Areather owed that sum as the balance of the purchase price of the property. Shortly before the fire the insurance on the dwelling had been increased to $2,000, and the contents of the dwelling had been insured for $800.

All of this, it is urged by the State, shows, as a reasonable and logical conclusion, (1) that two fires, in different places, going at the same time, must have been intentionally started by some human agency, since it is unlikely they would have originated in this manner by accident; (2) that the can and jugs of kerosene were so placed as to aid and guarantee a successful fire; (3) that the finding after the fire of the personal and household effects at the places appellant said he put them strongly supports the theory of intentional burning; (4) that the fact that the insurance was increased shortly before the fire supplies the motive for purposely trying to destroy the property and collect the insurance money, and (5) that all of these circumstances together prove, with the certainty required in such cases, the fire was of incendiary origin, without the necessity of using the confession—at least without using any of it other than that supported by evidence of facts to which the confession lead. In Pope v. State, 158 Miss. 794, 131 So. 264, 265, this Court, in the following language, laid down the rule by which to test whether the corpus delicti had been shown before a confession is admissible. ██ "In order for the corpus delicti to be established by evidence aliunde the confessions, it is not necessary that the proof aliunde should show the crime or corpus delicti beyond a reasonable doubt, but it is sufficient to show it by a preponderance of the evidence or by evidence amounting to a probability, and then the confessions will be received, and, if the confessions coupled with the proof of the corpus delicti aliunde show

the corpus delicti beyond a reasonable doubt, it is sufficient", citing a number of authorities. See also Sam v. State, 33 Miss. 347; Brown v. State, 85 Miss. 27, 37 So. 497; Stubbs v. State, 148 Miss. 764, 114 So. 827; Stepney v. City of Columbia, 157 Miss. 193, 127 So. 687; Gipson v. State, 162 Miss. 480, 139 So. 868; Garner v. State, 132 Miss. 815, 96 So. 743; Phillips v. State, 196 Miss. 194, 16 So. (2d) 630; Gross v. State, 191 Miss. 383, 2 So. (2d) 818.

██ ██ We are of the opinion the foregoing evidence met the test of the rule and that the corpus delicti was duly established.

As to whether the confession was free and voluntary, it is shown that appellant, after the officers had information connecting him with the crime, was "picked up" without a warrant and lodged in the city jail, where he was detained for a day or two until the state fire marshal could be present and question him. On the occasion of the alleged confession, there were present Harbour, Gunn and Stephens, members of the detective, or police, force of Meridian, and Ferguson, state fire marshal. Appellant said some of the policemen wore pistols exposed upon their persons. The officers said they were not certain as to that. They thought one policeman was wearing a pistol scabbard but none had a pistol. The confession was in the form of questions asked by Mr. Ferguson and answers given by appellant written out on a typewriter by a Mrs. Scarbrough as given, and signed by appellant after he had read them. The officers said appellant was not informed that he had a right to consult an attorney. Appellant did not make such a request. All of the officers testified that Ferguson told appellant that anything he said might be used against him; that there was no threat of violence or harm to appellant, and no inducement or hope of reward held out to him, to procure his answers. In other words, all four of the officers testified that the answers given by appellant were free and voluntary. Appellant said the fire marshal threatened to "stomp" him into the floor and directed him to answer, "Yes,

sir'' to all of the questions, and that he made the answers as a result of fear. However, the answers given by appellant do not show they were ''Yes, sir'' answers. For instance, he explained that Areather, a short time before the fire, had engaged him to do certain carpenter work and repairs on her residence. When asked how much he was to be paid therefor he replied, ''labor and material together ran to $450.00''. When asked if he knew the total fire insurance carried by Areather on that dwelling he replied, ''I think she told me she already had $1,000 on the house, and Bessie Williams had that policy; she raised it another $1,000 and then got $800 on her house furniture''. Asked as to his conversation with Areather about burning the house his reply was, ''She said she had more insurance, she could burn the house and pay off Bessie Williams and then have about $1600 left''. He said Areather told him she would pay him $50, balance she owed him for repair of the house, and an additional $150 in cash to help her burn the house; that he bought the kerosene and placed the jugs and the can upon the ceiling. He explained the manner of burning he had detailed to Areather as being the best method to adopt to make sure the house burned without the crime being detected, but Areather said she had a better method. Her idea was to place in the closet a lighted candle some twelve inches long, surround it with combustible materials, so that by the time it burned low she would be able to get out of town, the materials would ignite, and as the fire burned upward the jugs would explode, and the kerosene from the jugs and the can would assure a successful fire. Other answers made by appellant could be set out, which, if true, showed participation of appellant in the crime, and which answers are informative and stated facts which, in the nature of the situation, could have been known only to appellant and Cotton. These were not ''Yes, sir'' answers.

The fact that appellant, at the time he was being questioned, was then detained without a warrant, is merely

one element, albeit one of considerable force, to be by the trial judge considered and weighed along with all the other pertinent evidence in determining the facts whether the confession was free and voluntary.

 Whether the confession was free and voluntary, under all of the testimony in this case, was a question for the trial judge. He held the confession admissible and the evidence amply supports his conclusion.

Affirmed.