POOLE *v.* STATE

No. 42555　　　　March 4, 1963　　　　150 So. 2d 429

*James W. Lee,* Forest, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen.; Jackson, for appellee.

McElroy, J.

Julius Olin Poole, appellant, and his brother were jointly indicted in the Circuit Court of Newton County, Mississippi for the larceny of $200 in money from one J. B. Blackwell. Appellant was tried separately, found guilty, and was sentenced to serve four years in the state penitentiary.

On Saturday, November 25, 1961 J. B. Blackwell was serving a 60-day jail sentence for public drunkenness. He was used around the jail to help the jailer clean up and was in such favor with the sheriff that he was allowed to leave the jail on Saturday mornings and return on Monday mornings. A son of Blackwell had been killed in an accident, there had been an administration of his estate, and Blackwell had a check for $436.89 drawn on the administrator of the estate as his distributive share of the estate. When he was released from jail, he was unsuccessful in cashing the check until he obtained the endorsement of J. B. Everett, a local attorney, who knew Blackwell. Blackwell received several $100 bills when he cashed the check.

On Sunday Blackwell was at the home of his mother where his mother saw him handling and counting the money and putting it in what he called a secret place in his billfold. From the record, there is no question that Blackwell had this money on him when he left his mother's house that afternoon about four o'clock, right after he had counted the money, telling his mother that he would be back at six o'clock. That night shortly after midnight, his body was found where he had been run over by a hit-and-run driver, later determined to be one Teal, a resident of Meridian.

There was evidence by two officers who searched Blackwell's body that there was no money on his person when his body was found. On the 30th of November, three days later, Mrs. Hubert Valentine, an employee of the deputy sheriff's office, testified that appellant bought a tag for his 1950 Ford and paid for it out of a $100 bill.

On the cross-examination of Mrs. Blackwell, this question was asked: It is a fact, isn't it, that your son thought a lot of these Poole boys, Olin Poole and his brother, James, isn't it? A. Well, I think he did. I don't know. I didn't even know them. Q. You didn't know anything about what transpired out there after he left your home, did you? A. No sir, I do not. As to a question about how much money he had, she previously testified that he got $436, she thought. She saw him count it out and put it in a billfold in a secret place.

Sometime in February, 1962 appellant was picked up by the officers on the lookout investigation of a bank robbery at Lake, Mississippi. A previous investigation had apparently established some ground of suspicion of appellant in connection with the Blackwell case, and he was questioned about it at the time he was questioned about the bank robbery. He gave a free and voluntary confession of taking all but $60 of the money out of Blackwell's billfold while Blackwell was drunk and asleep on the couch at appellant's house, where Blackwell had been a frequent and welcome visitor. The court held that the confession was free and voluntarily given, that no inducements were offered or threats of any kind made against the appellant.

The appellant took the witness stand himself, on his own behalf, and testified to practically the same things as were outlined in the confession, except that he said he took the money to keep, knowing that someone else would get it, and that he got scared after everything happened and wouldn't give it back. He said that he

had gotten $214 out of Blackwell's pocket, which included two $100 bills, one of which he had used in buying his car tag.

When the sheriff was on the stand, at the point when they were to introduce the confession out of the hearing of the jury, the defense attorney objected to the admission of the confession on the ground that the state had not sufficiently proved the corpus delicti without the assistance of the confession, stating that the testimony that had been introduced at this point was not sufficient to make corroborating evidence which will allow the introduction of the confession.

The question here is: Is there sufficient evidence at this point to prove the corpus delicti that a larceny had been committed?

If the foregoing testimony is sufficient to prove the corpus delicti, there is no question that this man, the defendant, is guilty, because of his confession that they were out together, that he got the money, and that he bought a tag with one of the $100 bills. Of course, he stated that he got the money because he knew someone else would get it or something like that. He stated that they had gone to this drinking place, that Blackwell was drunk, and that they put him out and left him there. He and his brother left with the money and divided it equally. At no time did they turn it in or tell anyone about it.

(Hn 1) The definition of corpus delicti literally is "body or substance of the crime," meaning that a crime has actually been committed, having as a compound fact (1) the existence of a certain act or result forming the basis of the criminal charge, and (2) the existence of criminal agency as the cause of this act or result. (Hn 2) The identity of the accused is not an element of the corpus delicti. (Hn 3) Every element, criminal charge, and criminal agency must be proved beyond a reasonable doubt; (Hn 4) extra judicial admissions, declarations or confes-

sions of accused are not of themselves sufficient to establish the corpus delicti. In cases where there is evidence and also a confession, the rule is as follows: **(Hn 5)** ''In order for the corpus delicti to be established by evidence aliunde the confessions, it is not necessary that the proof aliunde should show the crime or corpus delicti beyond a reasonable doubt, but it is sufficient to show it by a preponderance of the evidence or by evidence amounting to a probability, and that the confessions will be received, and, if the confessions coupled with the proof of the corpus delicti aliunde show the corpus delicti beyond a reasonable doubt, it is sufficient.'' Since corpus delicti in the trial of a criminal case is one of the main elements in the state making out a prima facie case, it is best to see the application to each case whether of common law or statutory charge. Pitts v. State, 43 Miss. 472; Spears v. State, 46 So. 166, 92 Miss. 613; Sam v. State, 33 Miss. 347; Stringfellow v. State, 26 Miss. 157; Brown v. State, 32 Miss. 433; Pope v. State, 131 So. 264, 158 Miss. 794. See McElroy's Mississippi Evidence, sec. 22, Corpus Delicti; Underhill's Criminal Evidence, sec. 403, Proof of Corpus Delicti.

**(Hn 6)** Where accused confesses, corroborative proof will be held sufficient which satisfies the mind that it is real and not an imaginary crime for which accused has confessed. **(Hn 7)** A jury may find that the defendant is the guilty party on proof much less than ordinarily essential.

**(Hn 8)** The evidence indicates that Blackwell had been robbed some time Sunday night, and these circumstances should be sufficient under the previous decisions of this Court to make the confession admissible. In such cases as stated above all that is necessary aliunde the confession is a sufficient showing of a probability that a real crime has been committed and not an imaginary one, **(Hn 9)** and a confession may be used to prove this fact beyond a reasonable doubt by direct or circumstan-

tial evidence and **(Hn 10)** the accused criminal agency can be established by the confession alone. Allen v. State, 230 Miss. 740, 93 So. 2d 844; Jones v. State, 228 Miss. 458, 88 So. 2d 91; Barnes v. State, 199 Miss. 86, 23 So. 2d 405.

Affirmed.

*Kyle, Ethridge, Gillespie and Rodgers, JJ.,* concur.