**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-KA-00895-SCT**

*JAMES PARKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/7/2003 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS A. COLEMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JOHN R. HENRY |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND GRAVES, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Indicted for armed robbery and capital murder, James Parks was tried and convicted by a jury in the Circuit Court of Attala County of (1) accessory after the fact to the crime of armed robbery and (2) kidnaping. Thereafter, the trial court entered judgment in accordance with the jury's verdict and sentenced Parks to consecutive sentences of five years imprisonment for the accessory charge and twenty-five years imprisonment for the kidnaping charge. Parks moved for a new trial or judgment notwithstanding the verdict. The court denied those motions.

**FACTS**

¶2.     On June 21, 2000, Parks met up with James Jones and Vincent Butler at a store in Goodman, Mississippi. They went to a friend's house in Durant. Two females, Latricia Wilson and Shelly Gray, got into the car. The group drove around in Durant. The girls wanted to buy and smoke a small amount of marijuana, so the group went to Calvin Haymon's house in Kosciusko to make the purchase. On the way to Haymon's house, Parks saw a gun in the car - it slid from under James Jones's seat. Parks picked the gun up and gave it to Jones.

¶3.     When they arrived at the house, Jones went inside. He came out of the house talking on the phone, and a few minutes later, Haymon arrived. Jones and Haymon walked behind a truck and began talking.

¶4.     Yvonne Ellis arrived at the house to pick up Haymon. Haymon left the house; Parks and Butler joined Jones outside. Haymon came back with a white bag full of marijuana. Butler, Parks, and Jones inspected the marijuana.

¶5.     According to Ellis, Butler then brandished two guns, and James Jones ordered Haymon and Ellis to empty their pockets and put their hands on the car. Ellis stated that there was neither provocation nor argument preceding the robbery. In his statement to the police, Parks said that Jones tried to give a gun to him. Parks stated that he gave the gun back to Jones. Haymon began to argue with Jones, but Ellis gave up his money. During the argument, Jones told Haymon that "since your mouth is so big and since you keep running your mouth, you're going to take me to your stash."

¶6.     Jones then ordered Haymon and Ellis into the back seat of a car. Haymon and Jones continued arguing. At this time, Ellis felt "something cold" against the back of his head and heard someone say, "don't move." He testified that the person holding the gun to his head was James Parks. While he did not see Parks holding the gun to his head, the only people with guns were Butler and Parks. Butler was in front

2

of Ellis holding two guns. Jones was visible near the car arguing with Haymon. Parks then approached Haymon.

¶7. Haymon eventually sat in the car in such a way that his back was turned to the inside of the car and his feet were on the ground outside. Parks tried to force him to sit properly in the seat. He pointed his gun at Haymon and "was trying to make Haymon slide over on the back seat." Jones and Haymon argued about whether Haymon would slide over. This argument continued for approximately twenty minutes. At that time, Ellis's brother arrived on the scene in another vehicle, and Parks was still holding Haymon at gunpoint in the backseat of the car. Jones approached the other vehicle and shot Ellis's brother. Parks was still holding Haymon at gunpoint in the car, but Ellis ran away. Parks got into the back seat with Haymon, and Butler got into the front seat with Jones.

¶8. Jones drove down the road and stopped the car to let Butler get out. Jones asked Haymon where the rest of his marijuana was hidden, and Haymon showed him where it was. Jones, Haymon, and Parks got out of the car. Haymon got the marijuana and gave it to Jones. Haymon begged Jones not to kill him. Jones shot Haymon three to four times. After shooting Haymon, Jones came back with about a pound of marijuana. Jones took Parks home. Parks stated that he did not know where the murder weapon was hidden.

## DISCUSSION

### I. Corpus delicti

¶9. "The standard of review regarding admission [or exclusion] of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court 'will not reverse unless the error adversely affects a substantial right of a party.' " *Ladnier v. State*,

878 So. 2d 926 (Miss. 2004) (quoting *Whitten v. Cox*, 799 So.2d 1, 13 (Miss.2000)).

3

¶10.    As Parks correctly notes, "[c]orpus delicti is defined as the body or substance of the crime." ***Cotton v. State***, 675 So.2d 308, 313 (Miss. 1996). It has two elements which must be proven beyond a reasonable doubt in order to show that a crime has actually been committed. ***Id.*** (citing ***Poole v. State***, 246 Miss. 442, 446, 150 So.2d 429, 431 (1963)).  First, it is necessary to prove the existence of a certain act or result forming the basis of a criminal charge.  ***Id.***  Moreover, the State must prove the existence of criminal agency as the cause of this act or result.  ***Id.***  The suspect's identity is not a component of the corpus delicti.  ***Id.***  However, "[e]very element, criminal charge, and criminal agency must be proved beyond a reasonable doubt." ***Id.*** (quoting ***Poole***, 246 Miss. at 446, 150 So.2d 429).

¶11.    Parks refers this Court to the proposition that where a defendant confesses to a crime, the confession itself is not sufficient to support a felony conviction unless it is corroborated by independent evidence of the corpus delicti. ***Hodge v. State***, 823 So.2d 1162, 1166 (Miss. 2002) (citing ***Cotton v. State***, 675 So.2d 308, 314 (Miss. 1996); ***Bullock v. State***, 447 So.2d 1284, 1286 (Miss.1984); ***Steward v. State***, 32 So.2d 791, 791 (Miss. 1947); ***Pope v. State***, 158 Miss. 794, 131 So. 264, 265 (1930)).  However, where there is a confession, much slighter evidence is required to prove corpus delicti. ***Miskelley v. State***, 480 So.2d 1104, 1108 (Miss. 1985) (quoting ***Roberts v. State***, 153 Miss. 622, 121 So. 279 (1929).  "The corpus delicti need not be established beyond a reasonable doubt but to a probability, and proof coupled with a confession may be considered as establishing the corpus delicti beyond a reasonable doubt." ***Id.***

¶12.    Parks argues that the State failed to establish the corpus delicti of kidnaping.[1]  He asserts that because the State failed to prove corpus delicti.  He reasons that because the State failed to prove corpus delicti, the trial court erred in admitting his statement into evidence[2].

¶13.    We find that the trial court did not abuse its discretion by admitting Parks's statement.  Parks advances no evidentiary or constitutional basis as to why his statement was inadmissible at trial.  Parks concludes that because the State did not prove the corpus delicti  of the crime of kidnaping, his statement was inadmissible.  However, Parks does not offer any authority to support this proposition, and our research reveals none.  The statement was freely given to the police; there is no indication in the record that it was the result of coercion.  Moreover, the statement is relevant and more probative than prejudicial.  *See* M.R.E. 401 & 403.

¶14.    Moreover, it is true that the Court in ***Hodge*** held that a confession cannot support a felony conviction if there is no independent corroborating evidence of the corpus delicti.  However, Parks's statement was not incriminating with respect to the kidnaping charge; thus, it was not the statement itself which supported the jury verdict.  Other evidence adduced at trial - specifically, Ellis's testimony - implicated Parks in the unlawful, forcible seizing and confinement of Haymon.  In his statement, Parks did

---

[1] In his discussion of this issue, Parks makes several references to the sufficiency of the State's evidence regarding the corpus delicti of kidnaping.  The evidence as to corpus delicti is considered more thoroughly in the context of the trial court's denial of a directed verdict, infra Issue II.

[2] Parks waived his right to an attorney and gave a statement to the Kosciusko Police Department after he was arrested.  Curiously, in his brief, Parks states that the brief intentionally omits all information given in his statement.  Through this omission he instead attempts to "demonstrate that without [his] statement, the State...failed to establish a prima facie case of his guilt of kidnapping [sic]."  Thus, Parks seems to argue that the statement was erroneously admitted and, without it, the State could not have made its prima facie case.  However, Parks does not elaborate on why the statement was improperly admitted.  Further, there is absolutely no evidence that the statement was illegally obtained or improperly admitted into evidence.

5

not admit to any element of kidnaping, but he did admit to riding in the car with Haymon and Jones after Haymon was forced inside. Parks never admitted that he held Haymon at gunpoint. In fact, he only admitted holding the gun long enough to give it back to James Jones. Likewise, he did not admit that he forced Haymon into the back of the car, making him slide over so that Ellis could enter. Parks only admitted being in the car with Haymon. Therefore, we find that the cited portion of **Hodge** is inapposite to the case sub judice. This assignment of error is without merit.

## II. Directed verdict / judgment notwithstanding the verdict

¶15. The standard of review for the denial of a motion for directed verdict and judgment notwithstanding the verdict is the same. **Shelton v. State**, 853 So.2d 1171, 1186 (Miss. 2003). A directed verdict and JNOV both challenge the legal sufficiency of the evidence presented at trial. **Id.** The standard is as follows: "this Court considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." **Seeling v. State**, 844 So. 2d 439, 443 (Miss. 2003). The Court must reverse and render if the facts, viewed in that light, point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a guilty verdict. **Id.** The Court must affirm, however, when there is substantial evidence in support of the verdict of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. **Id.**

¶16. Parks asserts that "[t]he trial court erred when it denied [his] motion for directed verdict of not guilty which he made after the State of Mississippi rested and which he renewed after he rested." Likewise, his subsequent arguments in this issue all allege that the trial court erred in denying his motion for directed verdict. However, after the trial court denied that motion, Parks offered evidence on his own behalf. Therefore, Parks waived the appeal of the denial of the directed verdict. **Shelton**, 853 So.2d at 1186.

6

Thus, this issue is appropriately analyzed as asserting that the denial of JNOV was error since that was the last occasion on which the challenge was made. *See **id***.

¶17.    Pursuant to Miss. Code Ann. § 97-1-5 (Rev. 2000),

> Every person who shall be convicted of having concealed, received, or relieved any felon, or having aided or assisted any felon, knowing that such person had committed a felony, with intent to enable such felon to escape or to avoid arrest, trial, conviction or punishment, after the commission of such felony, on conviction thereof shall be imprisoned in the penitentiary not exceeding five years, or in the county jail not exceeding one year, or by fine not exceeding one thousand dollars, or by both; and in prosecution for such offenses it shall not be necessary to aver in the indictment or to prove on the trial that the principal has been convicted or tried.

Thus, the elements of this crime are that a completed felony has been committed; the defendant aided, assisted, concealed, relieved, or received a felon, with knowledge that the defendant had committed a felony; and the assistance was given with the intent to permit such felon to escape or avoid arrest, trial, conviction or punishment after the commission of such felony. ***Mangum v. State***, 762 So.2d 337, 342-43 (Miss. 2000).

¶18.    At the time of the incident in this case, the crime of kidnaping was defined as follows:

> Any person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will, or shall without lawful authority forcibly seize, inveigle or kidnap any child under the age of ten (10) years and secretly confine such child against the will of the parents or guardian or person having the lawful custody of such child, shall, upon conviction, be imprisoned for life in the state penitentiary if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the state penitentiary.

Miss. Code Ann. § 97-3-53 (Rev. 2000).

¶19.    Parks maintains that the trial court erred in denying his motions for directed verdict. Specifically, Parks points out that he did not take Ellis's money - rather, it was James Jones who took it. He argues that

7

according to the testimony, he did not put a gun to Ellis's head until after Jones had taken Ellis's money. Thus, "the State's evidence did not introduce James Parks on the scene of Yvonne Ellis's robbery until after it had been completed by Ellis' giving James Jones the money that was in his pocket."

¶20.  In addition, Parks contends that the trial court erred in denying his motion for directed verdict as to kidnaping, the lesser included offense of capital murder.  He argues that the State failed to prove that Haymon had been kidnaped before he was killed.  In his discussion of his second assignment of error, Parks "adopts his argument which he offered for this Court's consideration of his first issue to support his position on [the] second issue."  Thus, he apparently adopts his argument that the State failed to prove the corpus delicti of kidnaping.

¶21.  Considering all of the evidence in the light most favorable to the State and giving it the benefit of all favorable inferences that may reasonably be drawn from the evidence, we find that the trial court did not err in denying the motion for JNOV with respect to the accessory and kidnaping charges.

¶22.  First, regarding the accessory charge, the testimony showed that a felony had been completed - namely, Jones's armed robbery of Ellis - when Parks began assisting Jones.  Moreover, Parks knew that a felony had been completed because he undoubtedly saw Jones take Ellis's money.  Parks assisted Jones by holding a gun on Ellis, Parks's friend.  This action prevented Ellis from escaping to obtain assistance from law enforcement officials.  Therefore, Parks directly aided Jones in avoiding arrest, trial, conviction or punishment after the commission of the felony by preventing Ellis from assisting Haymon or escaping to obtain assistance.  Therefore, the evidence at trial was sufficient to prove each element of the accessory after the fact charge.  Thus, the evidence was more than sufficient to prove the corpus delicti of the accessory charge.

8

¶23. Parks correctly notes that, according to the testimony, he did not become involved in the incident until after Jones took the money from Ellis. Thus, Parks argues that the trial court erred in denying his motion for directed verdict of not guilty as to the crime of armed robbery. However, Parks's argument as to this point is without merit because, as the State points out, he was convicted as an accessory after the fact, not as the principal in a robbery.

¶24. Moreover, the trial court did not err in denying Parks's motion for JNOV with respect to the kidnaping charge.[3] Haymon was seated in the back seat of a car after being forced in at Jones's direction. Parks held Haymon there, undoubtedly against his will, in furtherance of the robbery. Parks never admitted to even holding a gun on Haymon, but he did admit to riding in the car with Jones, Butler, and Haymon after the robbery. Thus, we find that the testimony adduced at trial was sufficient to prove beyond a reasonable doubt that there was an act or result forming the basis of a criminal charge - specifically, forcing Haymon into the back seat of the car and confining him there against his will at gunpoint forms the basis of a criminal charge for kidnaping.

¶25. Further, the evidence proved criminal agency beyond a reasonable doubt. Jones robbed Haymon and told him he was going to take Jones to his stash. Ellis testified that he saw Parks holding a gun on Haymon. He also stated that Parks was trying to force Haymon to slide over in the back seat. Parks himself testified that Haymon was successfully forced into the back seat - he stated that he rode to the murder scene with Haymon and Jones, where Jones took Haymon's cache of marijuana. Moreover, as discussed, supra, Parks was holding a gun on Ellis and then Haymon immediately after Jones had robbed

---

[3]The State argues this point of error is procedurally barred. It is true that "[f]ailure to cite relevant authority obviates the appellate court's obligation to review such issues," *Byrom v. State*, 863 So.2d 836, 853 (Miss. 2003), but Parks refers the Court to his corpus delicti arguments in Issue I, which *are* supported by authority.

Ellis. Therefore, the evidence at trial proved that criminal agency was the cause of James Parks's confining Haymon in the back seat of the car. Thus, the two elements necessary to establish the corpus delicti of kidnaping have been established beyond a reasonable doubt in this case. Thus, this issue is without merit.

### III.    Accessory After the Fact Jury Instruction.

¶26.    This Court's standard of reviewing the grant or denial of jury instructions is well settled. The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole. *Thomas v. State*, 818 So.2d 335, 349 (Miss. 2002).    A defendant is entitled to have jury instructions which present his theory of the case. *Id.*  This entitlement is limited, however, in that the court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. *Id.*  To preserve a jury instruction issue for appeal, the defendant must "make a specific objection to the proposed instruction to allow the trial court to consider the issue." *Harris v. State*, 861 So.2d 1003, 1013 (Miss. 2003). In addition, "[a] defendant cannot complain of an instruction which he, not the State, requested." *Id.* at 1015.

¶27.    Parks argues that the trial court erred by granting the accessory after the fact instruction which he requested. He contends that the instruction was improper pursuant to Miss. Code Ann. § 99-19-5. Moreover, Parks maintains that the fourth element in the instruction was not supported by the evidence adduced at trial.

¶28.    This issue can be summarily resolved. Parks admits and the record reveals that Parks, not the State, requested Instruction Number 4, the accessory after the fact instruction. Pursuant to *Harris*, Parks may not now complain that the instruction was erroneously granted. We find that this issue is without merit.

### CONCLUSION

10

¶29.    For the foregoing reasons, we affirm that the judgment of the trial court.

¶30.    **COUNT II: CONVICTION OF ACCESSORY AFTER THE FACT OF ARMED ROBBERY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.    COUNT III: CONVICTION OF KIDNAPING AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  THE SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II.  APPELLANT IS TO PAY ALL COURT COSTS AND ASSESSMENTS.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**