JACKSON *v.* STATE

No. 43111 March 16, 1964 161 So. 2d 660

*Wilroy & Wilroy, Arthur E. Huggins,* Hernando, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Lee, C. J.

Tim Jackson was indicted for the murder of Jo Ann Jackson. The jury found him guilty as charged, and the court sentenced him to suffer the death penalty. From the judgment entered, he has appealed.

Strickland Bullard and his wife, Lillian, Negroes, lived on a farm in the Horn Lake district of DeSoto County, Mississippi. Jo Ann Jackson, eight years of age, a niece of Lillian, had lived with them about five years; and Jacquelyn Jackson, another niece, six years of age,

was visiting them. Tim Jackson, twenty-one years of age, a brother of Lillian, in January 1963, began to work for his brother-in-law on the farm.

The Bullards drove to Memphis on June 14, 1963, leaving home about 9 o'clock in the morning, with the understanding that Tim Jackson would see after the two little girls. Upon the Bullards' return, between 4 and 5 o'clock that afternoon, the children were gone. Tim, when asked where they were, said that the girls got to fighting; that he whipped them and made them come into the house and watch television; that he laid down and went to sleep; and that, when he woke up, the girls had disappeared. After failing to find the children, Strickland called the sheriff, who, with several deputies, went to the farm and began an investigation. When the Bullards saw the children the next morning, they were in a funeral home, dead.

About 8 o'clock that evening, shortly after commencing the investigation, Harold Jackson, the constable, also a deputy sheriff, talked to Tim Jackson in front of the Bullards' home, and Tim freely and voluntarily, without any threats or hope of reward of any kind, told him that he had killed Jo Ann Jackson and also where the body could be found. This officer immediately called to Deputy T. B. Hobbs and Tim repeated this free and voluntary statement. Hobbs then called to Sheriff Malcom Baxter, and he also heard Tim repeat this free and voluntary statement. The officers thereupon proceeded to the place, as described by Tim, and there found the bodies of Jo Ann and Jacquelyn among blackberry vines in a drain, covered with brush and an old car door.

The undertaker testified that there was a hole in the back of the deceased's head, apparently made by a bullet. The officers found blood in a bedroom and also a clean sheet on the bed. There was nothing between the mattress and the sheet, and blood had seeped through the mattress.

A coroner's inquest was held immediately and Dr. H. M. Wadsworth viewed the bodies at the place where they were found. It was his opinion that the cause of death, in each instance, was a gunshot wound in the head of each of the girls.

Strickland Bullard testified that he owned a .22 caliber rifle, and that, after he and his wife returned from Memphis, and before the children were found, he saw Tim Jackson near the calf barn with what looked like the .22 rifle.

Sheriff Baxter and Deputy Jackson carried Tim, immediately after his arrest, and locked him in jail. No one else was in the place except colored prisoners. When the inquest and examination were over, the sheriff and his deputies, Burmah Hobbs, Harold Jackson and Fritz Fisackerly went back to the jail where Tim Jackson made a free and voluntary confession, detailing the way and manner in which he killed and murdered the two little girls. Before doing so, there were no threats or promises of any kind made to him. Besides he was advised of his rights and that the statement could be used against him in court. It was shown that the statement was made, that it was reduced to writing, and that it was signed by Tim Jackson and witnessed by the sheriff and those named with him.

The introduction of the statement was objected to by counsel for the defendant on the ground that it was not free and voluntary. There was then a preliminary hearing in the absence of the jury on the voluntariness of the confession. After counsel for the defendant had exercised their right of cross examination, they stated that they had no evidence to offer. The court overruled the objection to the admission of this evidence, but excluded parts of the statement that were not pertinent to the issues of the alleged murder of Jo Ann Jackson, then being tried. The witness then read the restricted

statement of confession, omitting the stricken parts. The part, which was read, was as follows:

"June 14, 1963

"My name is Tim Jackson, I made this statement in the presence of Malcom Baxter, Sheriff, T. B. Hobbs, Deputy Sheriff, Harold Jackson, Deputy Sheriff, Fritz Fisackerly, Deputy Sheriff. Without any threats, promises and being advised of my rights and this statement may be used against me in the Court of law.

"I had sexual intercourse with Jo Ann Jackson about 12:30 P.M. June 14, 1963. I have lived with Strickland Bullard since about the 1st of January, 1963. There was no one at home except me, Jo Ann, and Jacquelyn. After the intercourse Jo Ann started crying. We were in the back room, my room. I got scared when she started crying. I went into the kitchen and got a .22 rifle that belonged to Strickland Bullard. I put one bullet in the gun. Jo Ann had gone to her room and was laying down on her bed on her stomach with her head on her hands. I was standing about four or five feet from her, I aimed the .22 rifle at her head and shot her in her head.

"I came back to the house and wrapped Jo Ann up in a sheet and carried her down to where I had carried Jacquelyn. There was an old car door down in the pasture. I went and got the car door and put the car door over the bodies. I got some more stuff and put over them, some boxes and croaker sacks and then I went back to the house and then watch television until Strickland Bullard, Lillian my sister and some other man I didn't know. I didn't have a shirt on. I had blood on my arms. I washed the blood off my arms. I tried to wash the blood off of my bed. I turned the mattress over in the girls room. The mattress had blood on it.

"Strickland Bullard came to the house. I told them I had gone to sleep and when I awakened, they had

gone. I went to the pasture and looked for Jo Ann and Jacquelyn.

"I told Constable Harold Jackson and told him the bodies were in the pasture with a car door over them with the blackberry vines. I told Constable Harold Jackson and Sheriff Malcom Baxter.

"I am the brother-in-law of Strickland Bullard and both girls are my nieces, the daughters of my sister, Jo Ann Jackson was living with Strickland Bullard and Jacquelyn Jackson.

"I am 20 years old and will be 21 on September 15, 1963.

"I have read the foregoing statement and find it true and correct as therein stated. There has been no reward or promise of reward made to me and I have made this statement voluntarily and of my own free will and volition.

"Witness my signature this 14th day of June, 1963.

/s/ Tim Jackson

Tim Jackson

Witness:

/s/ Malcom Baxter, Sheriff
/s/ Harold Jackson
/s/ Fritz Fisackerly
/s/ T. B. Hobbs, Deputy Sheriff"

After the State rested its case, the defendant rested, without offering any evidence. The jury returned a verdict of "guilty as charged", and the defendant was sentenced to suffer the death penalty in the manner provided by law. The motion for a new trial being overruled, the defendant appealed from the judgment entered.

■■ ■ The appellant has assigned and now argues the same questions that were raised on the motion for a new trial, namely, (1) that the verdict of the jury was against the overwhelming weight of the law and

the evidence, and (2) that it was reversible error to admit the confession, because the evidence was circumstantial and did not meet the requirement that it must exclude every other reasonable hypothesis than that of the guilt of the accused.

(1) The instructions required the State to prove the guilt of the defendant beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis than that of his guilt. Counsel make no complaint whatever about the form of the instructions. Consequently the court does not even need to consider whether the conviction rests alone upon circumstantial evidence. The safe course for the State, dictated by good practice, where a question arises as to whether the proof depends upon circumstantial evidence alone, is to assume affirmatively the burden of proving guilt beyond a reasonable doubt and also to the exclusion of every other reasonable hypothesis than that of the guilt of the accused. Reference to careful practice is not intended to impair or discredit in any way Anderson v. State, 246 Miss. 821, 152 So. 2d 702, and the authorities there cited, that a confession is direct and not circumstantial evidence. Counsel, on this proposition, cite Sorrells v. State, 130 Miss. 300, 94 So. 209. But that case simply reiterates the recognized rule that the State must not only prove guilt beyond a reasonable doubt, but also to the exclusion of every other reasonable hypothesis than that of the guilt of the accused. The instructions in the present case complied with that rule.

██ █ The child was shot through the head. The appellant was seen with a rifle in the late afternoon. The blood in the bedroom indicated the place where she lost her life. Her body was hidden some distance from the house among briers, and was covered by an old automobile door. This evidence demonstrated clearly that a real, not an imaginary, crime was committed. When all of these facts, together with the presence of the

defendant at the place, are coupled with the confession, they meet and satisfy the requirement in regard to the sufficiency of the proof of the appellant's guilt beyond reasonable doubt and to the exclusion of every other reasonable hypothesis than that of guilt. See Buford v. State, 219 Miss. 683, 69 So. 2d 826; Jones v. State, 228 Miss. 458, 88 So. 2d 91; Allen v. State 230 Miss. 740, 93 So. 2d 844; Poole v. State, 246 Miss. 442, 150 So. 2d 429; and the authorities cited in those cases. Consequently the Sorrells case, supra, when viewed in the light of the evidence in the present case, is of no value to the appellant because the proper measure of proof, required by that case, was clearly established in this trial.

(2) As to whether there was error in the admission of the statements and confession, the appellant cites Johnson v. State, 107 Miss. 196, 65 So. 218, (1914); White v. State, 129 Miss. 182, 91 So. 903, (1922); Jones v. State, 133 Miss. 684, 98 So. 150 (1923); Fisher v. State, 145 Miss. 116, 110 So. 361 (1926); and Street v. State, 200 Miss. 226, 26 So. 2d 678 (1946).

In the Johnson case, supra, the appellant was sick, in jail, and in fear of being lynched. A prominent newspaperman went into the jail three times to see him for the purpose of obtaining a confession. In order to do this, he represented to the appellant that he would have no peace or hope of salvation unless he confessed; that the newspaperman also represented that he was a spiritualist with extraordinary power and could look into the defendant's heart and see the crime that he had committed. This Court held that a confession, obtained under those circumstances, should not have been admitted in evidence.

In the White case, supra, an 18 year old illiterate Negro boy was arrested and carried to the scene of a horrible murder, but was released. He then fell into the hands of infuriated planters and managers. They

carried him to the store building where the bloody corpse lay, and a crowd of armed men were waiting to obtain a confession. The appellant confessed to one of the crowd, and they then administered to him the so-called "water cure" by pouring water in his nose while he was on the floor on his back, with his hands tied behind him. Of course, this Court held that a confession obtained under such circumstances was not entitled to be admitted in evidence.

In Jones v. State, supra, the court applied the rule that, where a confession has been illegally obtained from an accused by inducements held out or by fear brought out by the person taking it, a subsequent confession, made under the influence of the same inducements, cannot be admitted.

The Fisher case, supra, was another case where the evidence showed that the "water cure" was administered in order to obtain the confession. This fact, coupled with other circumstances, was the basis for condemnation of the confession.

In the Street case, supra, the appellant, a large and powerful Negro, had raped a 12 year old white girl. The voluntariness of the confession was not questioned on the preliminary investigation. However, on the merits, the appellant repudiated the confession and testified that it was coerced by threats from the officers. The officers all denied his version. Since the matter was in dispute, it was heard by the jury and resolved against the appellant.

These cases, relied upon by the appellant, afford no basis for finding the trial court in error in regard to the admission of the statements and confessions in the present case.

Besides, the appellant offered no evidence to show fear or raise any question concerning the voluntariness of the confession. On the contrary, all of the officers testified that there were no threats, coercion,

or promises of any kind made to the appellant in order to obtain the admissions and confessions, and that these statements of the appellant were made freely and voluntarily by him.

Counsel for the appellant also urge the Court to reverse this case for the reason that "it is against all reason for a person to freely and voluntarily confess to the commission of a capital crime well knowing such statements may result in forfeiture of his life." Such a decision by this Court would indeed constitute a radical innovation in the criminal jurisprudence of this State and country and would abolish the wisdom of the ages. Many years ago, a great poet had one of his characters to say that "Murder will out". Who knows to what extent a chiding conscience may drive one! Here was a helpless little girl, the niece of the appellant, broken in body and violently ravished. A short time later, because she was crying, he murdered her in an effort to conceal his crime. If the appellant had a remaining trace of enlightened conscience, it would indeed have been almost miraculous if he had refrained from acknowledging his guilt and failed to seek peace for his immortal soul in the life beyond the grave — especially so, when the blood of this little child was crying out from the ground! The Court rejects the argument of counsel on this proposition completely. The evidence shows that this was a voluntary confession, proceeding from the spontaneous operation of the appellant's mind, free from the influence of any extraneous cause; and the Court accepts it as such. Whip v. State, 143 Miss. 757, 109 So. 697.

 The mere fact that the appellant was in the custody of the officers when he made, read, and signed the written confession, explaining all of the details, does not make it inadmissible. Jackson v. State, 163 Miss. 235, 140 So. 683.

The guilt of the appellant was proven beyond every reasonable doubt and to the exclusion of every other reasonable hypothesis than that of the guilt of the accused. It was a horrible and inexcusable murder. There is no error in this record. If one is ever to suffer the death penalty for murder, this is clearly an instance for the infliction of such extreme punishment. The jury obviously was not able to find anything to justify or permit leniency or mercy. It therefore found that the proper verdict was "guilty as charged", signifying that death was the punishment that this appellant deserved and should receive.

Affirmed and Friday, the 1st day of May, 1964, is set as the date for the execution of the sentence and the infliction of the death penalty in the manner provided by law.

Affirmed and Friday, May 1, 1964, is set for date of execution of death sentence.

All Justices concur.