234 So.2d 611 (1970)
Robert Earl STENNIS
v.
STATE of Mississippi.
No. 45819.
Supreme Court of Mississippi.
April 27, 1970.
Albert Sidney Johnston, III, Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by Velia Ann Mayer, Special Asst. Atty. Gen., Jackson, for appellee.
*612 BRADY, Justice:
This is an appeal from the Circuit Court of Jackson County, Mississippi, wherein the appellant, Robert Earl Stennis, was indicted for the murder of John Earl Burrell. The appellant was tried, found guilty of manslaughter, and sentenced to twenty years at the Mississippi State Penitentiary. From that judgment this appeal is taken.
It appears from the record that on the night of November 21, 1968, around 8:00 P.M., the deceased, John Earl Burrell, along with Irma Ruth Mitchell, Alberta Caldwell, Ollie Jean Harris and Chester Coley, went to McArthur's place called the "Blue Flame." From the testimony of all the witnesses it appears that the appellant went to the table where the group was seated, asked the "date" of the deceased, Ollie Jean Harris, to dance, and Ollie refused. The appellant went back to his table. A short time later, when John Earl Burrell had gone to the men's room, the appellant again went to the table and asked Ollie Jean Harris to dance. Thereupon Ollie got up and danced with the appellant. After the band finished playing the number, Burrell, displeased, got up and took Ollie Jean from the dance floor. The appellant once more approached the table where the group was seated and attempted in his own fashion to apologize. The appellant and his friend, "Jabo," then left the establishment. Approximately five to fifteen minutes later the deceased and Ollie left. The testimony is in conflict as to whether the deceased and Ollie left all "hugged up" or whether Ollie was trying to restrain Burrell from leaving. Upon reaching the outside, the deceased was confronted by the appellant with "Jabo" nearby. It is disputed as to whether or not a scuffle ensued but the record discloses that the appellant was waiting outside and had an open knife in his hand and that he "jugged" the deceased twice, once in the stomach and once in the heart. The appellant then got in his car, drove half a block, turned around, came back, and after Burrell was placed in his car mortally wounded or dead the appellant transported him to the hospital. The stabbing took place at approximately 10:45 P.M. The appellant contends that the reason he "jugged" the deceased was that the deceased *613 had his hand in his pocket and appeared to be pulling it out with something in it. The record conclusively discloses that the deceased was unarmed.
J.B. Gibson, the Chief of Detectives with the Pascagoula Police Department, testified that he investigated the killing of John Earl Burrell. Upon receipt of a call Mr. Gibson went to the hospital where he found Burrell in the morgue, and a warrant was issued for the arrest of Robert Earl Stennis for the murder of John Earl Burrell. The appellant was arrested by Highway Patrolman Pete Pope. Captain Gibson testified that they advised the appellant he was under arrest upon his arrival at the station and also that they advised appellant of his constitutional rights numerous times, but that the appellant kept talking. At this point in the trial the jury was retired and a thorough examination was made of the testimony to determine whether or not the appellant knowingly and voluntarily, after being advised of his constitutional rights, signed the confession. This hearing was had out of the presence of the jury. The record discloses that the desk sergeant received a telephone call in regard to the incident at 10:47 P.M. Mr. Gibson began his investigation of the case at 11:00 P.M. The appellant was arrested and advised of his rights and a resume thereof was read to him by Detective J.B. Gibson of the Pascagoula Police Department at approximately 2:35 A.M. The questioning of appellant began at 3:25 A.M. The statement was prepared and at 4:10 A.M. it was signed by the appellant. Appellant had been drinking but in the opinion of the officers who had known him all his life he was not drunk, and his thinking was not impaired. The judge, after much deliberation, decided that the confession was admissible and a copy was placed in the record. However, the record does not disclose that the confession was actually introduced, except for identification, or that it was ever read to the jury. The instructions, which are not contested, permitted the jury to return a verdict of murder and a verdict of manslaughter was returned. The judge sentenced the appellant to twenty years in the Mississippi State Penitentiary, and this appeal is taken therefrom.
The appellant assigns two errors: (1) That the verdict of the jury is against the overwhelming weight of the evidence, and (2) that the trial court erred in allowing the illegally obtained confession admitted into evidence. After a careful review of the record together with the briefs of counsel we consider the first error assigned, that the verdict is against the overwhelming weight of the evidence. There is no dispute in the record that the appellant inflicted the fatal stab wounds upon the deceased, Burrell. Appellant himself concedes this fact but urges that he did so upon the grounds of self-defense. Mamie Williams alone testified that she saw Burrell hit the appellant on the head with his hands. She stated, however, that she did not see a knife or other weapon in Burrell's hands. It is to be noted that Irma Mitchell testified on rebuttal that she did not even see Mamie Williams at the club that night.
Joe McArthur, who operated the "Blue Flame," testified that Burrell was waving his hands and trying to get to the appellant. He did not see anything in Burrell's hands at the time he saw the appellant stab Burrell one time. To the contrary, Ollie Jean Harris testified that the appellant "jugged" Burrell when Burrell was doing nothing to endanger the appellant. Irma Ruth Mitchell, who was with Ollie Jean Harris, John Earl Burrell, Alberta Caldwell and Chester Coley at the "Blue Flame," did not see the stabbing but testified that as far as she knew Burrell did not have a knife. Appellant's witness, Joe McArthur, testified that the appellant drew a knife on Burrell when he was in the "Blue Flame" prior to the time Burrell was stabbed outside. McArthur testified that he told the appellant to put his knife up.
At the outset these conflicts as to material facts, which are definitely believable, *614 are for determination by the jury. No error is assigned by either the appellant or the State in the granting of the instructions and, as was stated in McLelland v. State, 204 So.2d 158 (Miss. 1967), "the jury is the sole judge of the credibility of witnesses and the weight and worth of their testimony. * * * We have repeatedly held that the jurors may accept the testimony of some witnesses and refuse that of others, and that they may accept in part and reject in part the evidence on behalf of the State and on behalf of accused. * * * It is not for this Court to pass upon the credibility of witnesses and where the evidence justifies the verdict it must be accepted as having been found worthy of belief." (204 So.2d at 164.) As reasonable men, the jury had a right to and did accept and act upon the State's evidence together with evidence offered by the appellant. The jury verdict in this cause in our opinion is supported by substantial evidence which is worthy of belief.
As pointed out in the brief for the State, the appellant cites no authority in support of this error. However, we take judicial knowledge of the decisions of this Court in reference thereto. In order to justify the appellant's contention of self-defense and that the overwhelming weight of the evidence is in support thereof, the record must disclose, which it fails to do, that the appellant had a reasonable apprehension of a design or plan on the part of the deceased to kill him or to do great bodily harm, and furthermore that there was imminent danger of such design being accomplished. Chester v. State, 216 Miss. 748, 63 So.2d 99 (1953); Robinson v. State, 49 So.2d 413 (Miss. 1950). The mere apprehension that some minor battery might have been committed upon the appellant is not sufficient to establish self-defense. Smith v. State, 6 So.2d 134 (Miss. 1942). It is significant to note that the appellant at the time of the assault was a much larger man than the deceased, appellant weighing at that time approximately 165 to 170 pounds while the deceased, Burrell, weighed around 110 to 115 pounds. The record completely establishes the fact that Burrell was unarmed. Again, an issue of fact was presented for determination by the jury as to whether or not the appellant acted in necessary self-defense at a time when he was in danger, real or apparent, of losing his life or of sustaining great bodily harm at the hands of John Earl Burrell. This issue of fact the jury resolved against the appellant. Pickert v. State, 234 Miss. 513, 106 So.2d 681 (1958). Even if the deceased, John Earl Burrell, had been physically capable of inflicting serious bodily injuries upon the appellant with his hands and his feet, which capability is open for question, such a fact alone is inadequate to justify the appellant's use of a deadly weapon in homicide cases. Marshall v. State, 220 Miss. 846, 72 So.2d 169 (1954).
Furthermore, we have held that a person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm; that where a person repels an assault with a deadly weapon, he acts at his own peril and the question of whether he was justified in using the weapon is for determination by a jury unless there is no reasonable inference in the evidence except that the use of the deadly weapon appeared necessary to protect the person from death or great bodily harm at the hands of his assailant. Blackwell v. State, 44 So.2d 409 (Miss. 1950); Howard v. State, 18 So.2d 148 (Miss. 1944); Bangren v. State, 196 Miss. 887, 17 So.2d 599 (1944).
All of these material issues of fact as to whether or not appellant acted in necessary self-defense to save his life or protect himself from great bodily harm were resolved by the jury against the appellant and this determination is not against the overwhelming weight of the credible testimony. For these reasons there is no merit in the first error assigned by the appellant.
*615 Considering next the second assignment of error, which is that the trial court erred "when it allowed an illegal confession admitted into evidence," we fail to find anywhere in the record that a confession of the appellant was admitted as an exhibit into evidence. The record does disclose that in the absence of the jury confessions one and two were introduced and marked for identification but nowhere does the record disclose that they were ever read to the jury or that they were submitted as exhibits for consideration by the jury. In the reply brief of the appellant it is stated that they were delivered to the jury along with the other exhibits for consideration by the jury, the other exhibits being the indictment and appellant's knife. The appellant's knife was introduced in evidence and marked as Exhibit 1. Appellant is correct in his reply brief where he states that the trial judge originally ruled the confession inadmissible but that the trial judge reversed himself and even in doing so displayed a reasonable doubt as to the admissibility of the confession.
The record reveals that the State advised the court several times in the absence of the jury that it did not intend to introduce the written confessions; that it would rely upon the oral testimony of the appellant, and the record discloses that this is what the State did. Assuming, however, that the jury was given the two written confessions, which the record does not reveal to have taken place, the State established a prima facie case of admissibility of both the written and oral confessions by the testimony of Officer J.B. Gibson, Chief of Detectives of the Pascagoula Police Department. Out of an abundance of precaution, the State went further and put on Officer G.R. Thompson, Identification Officer of the Pascagoula Police Department, who also reiterated the steps taken by Gibson and himself to inform the appellant of his constitutional rights under the mandate of the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
On recall, Mr. Gibson testified a second time because of some possible confusion as to exactly when the appellant was advised of his constitutional rights. The testimony of these two officers clearly establishes the fact that the appellant was amply advised of his constitutional rights before he gave his oral or written confession and before he identified the knife which was used in stabbing the deceased, Burrell, as being his knife. Agee v. State, 185 So.2d 671 (Miss. 1966); Jackson v. State, 249 Miss. 202, 161 So.2d 660 (1964); and Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959).
The record also discloses by the testimony of the appellant, taken when the jury was retired, which related solely as to whether or not he was warned of his constitutional rights, that the appellant thoroughly understood what his constitutional rights were before he gave the written or oral confession and is sufficient to justify the trial court's finding that he had been advised of his constitutional rights. The trial judge had sufficient and credible testimony to conclude that the appellant knowingly and voluntarily made the oral confession and executed the written confession of having committed the crime. Winston v. State, 209 Miss. 799, 48 So.2d 513 (1950); Street v. State, 200 Miss. 226, 26 So.2d 678 (1946); and Parker v. State, 194 Miss. 895, 13 So.2d 620 (1943). We are forced to conclude that the State met its burden of proof and showed by the testimony of the officers and appellant himself that the warnings required by the decision in Miranda v. Arizona, supra, were given prior to the uttering of any oral or the signing of any written statements of confession by the appellant.
The recommendation or restriction imposed by Harvey v. State, 207 So.2d 108 (Miss. 1968), urged by the appellant, is inapplicable to the case at bar for the reason that the appellant in the case of *616 Harvey v. State, supra, was an eighteen year old youth of sub-normal intelligence. The proof in the case at bar shows that the appellant had gone through the ninth grade of high school and though he did not read "too good," nevertheless he was told what his rights were and a resume of his rights was read and explained to him so that he understood what his rights were. The record fails to disclose that the appellant was a minor or was deficient in intelligence.
The record fails to disclose and no one knows the exact stimuli which prompted the appellant to take the life of John Earl Burrell. The proof in this case is such that the jury could have found the appellant guilty of murder. Be that as it may; the jury's verdict of guilty of manslaughter was justified by a preponderance of the credible evidence and the court's judgment of twenty years imprisonment in the State penitentiary is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, PATTERSON and SMITH, JJ., concur.