915 So.2d 1063 (2005)
Jamison Casey DUNIGAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KP-01934-COA.
Court of Appeals of Mississippi.
May 3, 2005.
Rehearing Denied September 20, 2005.
Certiorari Denied December 8, 2005.
*1066 Jamison Casey Dunigan, Appellant, pro se.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before BRIDGES, P.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. A Franklin County jury found Jamison Casey Dunigan guilty of theft of anhydrous ammonia while in the possession of a firearm. For this crime, Dunigan was sentenced to ten years in custody of the Mississippi Department of Corrections. Aggrieved Dunigan now appeals asserting the following issues: (1) the Appellant was denied his Sixth Amendment right to effective assistance of counsel, (2) the trial court erred in refusing defendant's motions for directed verdict, judgment notwithstanding the verdict or, in the alternative, a new trial, (3) the trial court committed reversible error in allowing prosecutorial misconduct, (4) the trial court erred in failing to swear in the jury properly, (5) the trial court erred in allowing a State's witness to testify in rebuttal, (6) the trial judge's sentence was the result of bias, prejudice or other arbitrary factors, and (8) the verdict should be reversed for cumulative errors.
¶ 2. We find no reversible error; therefore, we affirm the judgment of the trial court.

FACTS
¶ 3. On October 15, 2002, the Franklin County Sheriff's Department was called because someone had observed a stranger on Gene Seal's farm which is located one mile west of Meadville on Highway 84. Deputy Rodney Foster was sent to investigate. When Foster arrived at the farm, he observed an orange water cooler beside the anhydrous ammonia tank with a hose leading from the tank to the cooler. Foster also noticed vapor coming out of the cooler. When Foster looked inside of the cooler, he observed anhydrous ammonia about three-quarters of an inch to an inch in depth. Foster realized that a theft was in progress, so he shut off the valve to the tank and called other deputies to join him.
¶ 4. Foster then noticed a blue pickup truck approaching. Stephanie Uriegas was driving the truck, and Ciara Ray was on the passenger side. While talking to Uriegas, Foster noticed that the bed of the truck contained a five gallon propane tank, pipes of assorted sizes and lengths, and tools. Foster became suspicious when he saw the items in the back of the truck because such items are used to steal anhydrous ammonia. Foster's suspicions were further aroused when Uriegas told him that she was from Natchez, despite the fact that the truck had a Warren County license plate. Foster then asked the women to get out of the truck. At this time, Uriegas seemed nervous. Uriegas then told Foster that she had dropped off Dunigan in the area.
¶ 5. Uriegas testified that at approximately 6:00 p.m., she, Ray, and Dunigan went to get a butane bottle from Robby Cain in Cloverdale, Mississippi. They were traveling in a 1996 model, extended cab blue pickup truck. Two water coolers were in the bed of the truck. At some point after they picked up the butane bottle, *1067 Dungian told Uriegas, who was driving the truck, to let him out. Dunigan got out of the truck, taking a rifle and one of the water coolers. Dunigan then told Uriegas to find him in twenty minutes. Uriegas did as Dunigan instructed. However, while going back to the place where she had dropped off Dunigan, Uriegas was stopped by Deputy Foster. Uriegas then told Foster where she had dropped Dunigan off. Based on this information, a search for Dunigan began.
¶ 6. Dunigan was not found in the area but was found two days later in Concordia Parish, Louisiana where he was arrested. Dunigan was taken to the Franklin County jail. The police took statements from two inmates at the Franklin County jail. At trial Marie Fleming, one of the inmates from whom a statement was taken, testified that she heard Dungian ask Ureigas if Ureigas intended to testify against him. Walczak, the other inmate, testified that he was incarcerated with Dunigan and that Dunigan confessed to him and other inmates that he was trying to get the anhydrous ammonia to make some crystal meth. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Ineffective assistance of counsel
¶ 7. Dunigan asserts that his trial counsel rendered ineffective and deficient service because trial counsel (1) failed to perform any pre-trial investigation or interview potential witnesses, (2) failed to file any pre-trial motions, specifically a motion for a reduction of bond, a motion to suppress evidence, and a discovery motion, (3) failed to conduct an effective voir dire, (4) failed to make necessary objections, thereby preserving error, (5) failed to suppress evidence and/or testimony, (6) failed to conduct an effective cross-examination, (7) failed to object to sentencing without a pre-sentencing investigation being performed, and (8) failed to object to the trial court's consideration of inadmissible evidence. Dunigan also asserts that his trial counsel allowed false information to be considered at Dunigan's sentencing.
¶ 8. To make a successful claim of ineffective assistance of counsel, the defendant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland explains the test as follows:
First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced his defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.
Id. at 687, 104 S.Ct. 2052. The Strickland court further held that "[t]he constitution does not guarantee a right to errorless counsel" and declared:
[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, supra, 350 U.S. [91], at 101, 76 S.Ct. [158], at 164[, 100 L.Ed. 83 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.
466 U.S. at 689-90, 104 S.Ct. 2052.
¶ 9. In the case at bar, Dunigan must overcome the strong presumption that his *1068 trial counsel's decisions were a result of sound trial strategy and fall within a reasonable range of acceptable conduct. While Dunigan's trial counsel's performance might have been less than perfect and lacking in some respects, we find nothing in the record that proves that Dunigan's trial counsel's performance was not in the "wide range of reasonable professional assistance." Although Dunigan makes several allegations regarding his trial counsel's ineffectiveness, the record is insufficient for us to determine the merits of some of his allegations. For example, there is nothing in the record to support Dunnigan's allegations that trial counsel failed to perform any pretrial investigation or failed to interview potential witnesses. Further based on documents not contained in the record but included in Dunigan's record excerpts, a reasonable inference can be drawn that trial counsel either requested some discovery or some discovery was voluntarily tendered to him by the State.
¶ 10. To satisfy the second prong of the test, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. We find that even if Dunigan's trial counsel's performance was deficient, there is no reasonable probability that the proceeding would have been different given the abundance of evidence against him, including his statement to Walczak that if he (Dunigan) could have gotten away, he could have made about twenty-seven or thirty grams of crystal meth.

(2) Motion for a judgment not withstanding the verdict and for a new trial
¶ 11. "The standard of review for a denial of a directed verdict, peremptory instruction and a J.N.O.V. are identical." Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003) (citing Coleman v. State, 697 So.2d 777, 787 (Miss.1997)). A "motion for a J.N.O.V., a motion for a directed verdict and a request for a peremptory instruction challenge the legal sufficiency of the evidence." Id. (citing McClain v. State, 625 So.2d 774, 778 (Miss. 1993)). "On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that `reasonable and fair-minded jurors could only find the accused not guilty.'" Id. (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)).
¶ 12. Dunigan argues that the trial court erred in failing to grant his motion for a judgment not withstanding the verdict and for a new trial. Dungian contends that the State failed to prove that he stole the anhydrous ammonia and failed to prove that he had a firearm. Dunigan maintains that Rodney Foster, Gene Seale, and James Newman should not have been allowed to testify to the substance in the orange cooler as being anhydrous ammonia because there was no analyst testifying to the results of an analysis of the substance found in the cooler.
¶ 13. The State counters that it presented sufficient evidence to support Dungina's conviction. The State contends that even though nobody could testify that Dunigan began the siphoning process, an inference could be drawn because two witnesses, Ciara Ray and Stephanie Uriegas, stated that Dunigan got out of the truck with a gun and a water cooler.[1] The State *1069 also notes that Dunigan admitted the theft to two inmates in the Franklin County jail. In addition to this evidence, we note that Marie L. Fleming testified that while she was incarcerated with Ciara Ray and Stephanie Uriegas in the Franklin County jail, she heard Dunigan ask Ray if she was going to testify against him.
¶ 14. Given the evidence presented against Dunigan, we cannot say that the evidence, with respect to one or more of the elements of the crime with which Dunigan was charged, was so lacking that reasonable and fair-minded jurors could have only found him not guilty. Therefore, we find no error in the trial court's denial of Dunigan's motion for judgment notwithstanding the verdict.
¶ 15. We now address Dunigan's contention that he should have been granted a new trial.
In reviewing the decision of the trial court on a motion for a new trial, [an appellate court] views all of the evidence in the light most consistent with the jury verdict. A motion for a new trial addresses the weight of the evidence and should only be granted to prevent an unconscionable injustice.
Wall v. State, 820 So.2d 758, 759(¶ 5) (Miss.Ct.App.2002) (quoting Daniels v. State, 742 So.2d 1140, 1143(¶ 11) (Miss. 1999)).
Based on the evidence which we have already recounted in this opinion, we are not convinced that allowing the jury's verdict to stand will sanction an unconscionable injustice. Accordingly, we find that the trial court did not abuse its discretion in denying Dunigan's motion for a new trial.

(3) Prosecutorial misconduct
¶ 16. Dunigan first argues that the State's cross-examination of him was irrelevant and prejudicial and, had not trial counsel been ineffective, timely objections would have preserved errors. Dunigan maintains that the prosecutor implied that he (Dunigan) had a sexual relationship with Ciara Ray and that this implication was clearly an attempt to prejudice the jury. Dunigan asserts that it was plain error for the trial court to allow the prosecution to deflect the attention of the jury from the issues it was called upon to decide.
¶ 17. The State counters that there was no prosecutorial misconduct and that the prosecutor conducted an effective cross-examination. The State maintains that the line of questioning regarding Dunigan's relationship with Ray was to establish how Ray got to Mississippi, which was directly related to Dunigan's testimony concerning Ray and Uriegas's motive for allegedly setting him up. The State further maintains that no objections were made to the cross-examination; therefore, Dunigan's allegations are barred from review. The State maintains that Dunigan attempted to surprise the prosecutor with a claim that he (Dunigan) had written proof that Ciara Ray was coerced into testifying against him. The written proof was three pages of a four-page letter written from Ciara to Dunigan. At the end of the letter, Ciara stated, "I didn't know I would love you always." The State asserts that once Dunigan testified to the existence of the letter, it was fair game for the State to examine him on it.
¶ 18. We first note that the State is correct that no objections were made to *1070 the State's cross-examination. The Mississippi Supreme Court has held that "where it was alleged that the prosecutor made improper comments during both opening and closing arguments as well as while examining witnesses, but no objections were raised at trial, the defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal." Watts v. State, 733 So.2d 214, 233(¶ 53) (Miss.1999).
¶ 19. We do not find any error in either the prosecutor's cross-examination of Dunigan or in her closing argument. Therefore, there is nothing to consider under the plain error doctrine.
¶ 20. Counsel is not required to be logical in [his] argument; he is not required to draw sound conclusions, or to have a perfect argument measured by logical and rhetorical rules; his function is to draw conclusions and inferences from evidence on behalf of his client in whatever way he deems proper, so long as he does not become abusive and go outside the confines of the record.
Johnson v. State, 416 So.2d 383, 391 (Miss. 1982).
¶ 21. We have reviewed the State's cross-examination of Dunigan, as well as the States's closing argument, and find that the State's line of questioning regarding Dunigan's relationship with Ciara Ray was proper and that the State's closing argument did not exceed the proper bounds for closing argument. Therefore, there is no merit in this contention.
¶ 22. Dunigan next asserts that the prosecutor violated Rule 3.12 of the Uniform Rules of Circuit and County Court Practice because the prosecutor made the following side remark in her examination of Dunigan: "I think your definition of the truth is a little different from mine, but, at any rate, as I said, you signed off on it." The prosecutor further stated, "I don't doubt someone is committing perjury today, too, Mr. Dunigan."
¶ 23. The State counters that there was no foulness in this comment in that the prosecutor merely responded that she did not doubt that someone was committing perjury. The State contends that even if this court were to suppose that the comment should not have been made, it was surely a harmless error and not a prejudicial one. We agree, and see no need to discuss this issue any further.
¶ 24. Dunigan next asserts that the prosecutor attempted to sway the jury by interjecting personal beliefs about him. He complains of this statement made by the prosecutor during closing argument: "This is just a case, ladies and gentlemen, of who do you believe. Are you going to believe the State's witnesses, or are you going to believe Mr. Casey Dunigan. And I submit to you that the story that he told is the biggest crock I've ever heard." Dunigan maintains that these comments prejudiced the jury and jeopardized his right to be judged solely on the evidence presented.
¶ 25. The State submits that there is no impropriety in the prosecutor's argument concerning the credibility of the State's witnesses and Dunigan's incredible testimony. The State maintains that lawyers may argue the credibility of witnesses. We agree.
¶ 26. Any allegedly improper prosecutorial comment must be evaluated in context, taking into consideration the circumstances of the case when deciding the comment's propriety. The test for determining if improper argument by the prosecutor to the jury requires reversal is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an *1071 unjust prejudice against the accused as to result in a decision influenced by the prejudice so created. Prosecutors are afforded the right to argue anything in the State's closing argument presented as evidence.... Prosecutors should refrain from doing or saying anything that would tend to cause the jury to disfavor the defendant due to matters other than evidence relative to the crime.
Dancer v. State, 721 So.2d 583, 589(¶ 31) (Miss.1998).
¶ 27. Considering the comment contextually, and the fact that lawyers are given wide latitude during closing argument, we find nothing improper about the statement.

4. The trial court erred in failing to properly swear the jury
¶ 28. Dunigan asserts that the trial court failed to properly swear in the jury members, and therefore, the verdict is null and void. Dunigan maintains that there is nothing in the transcript, the jury verdict or the sentencing order that makes any reference to the jury being properly sworn.
¶ 29. The State responds that it is true that the transcript does not include the actual giving of the juror oath, but that there is ample evidence that the oath was given. The State points out that while the judgment did not use the phrase "duly sworn," it did state the jury had been duly selected as provided by law. The State contends that the phrase in the judgment is the functional equivalent of "duly sworn."
¶ 30. The supreme court of this state has found that it was not reversible error where the record did not reflect that the jury was specially sworn. Bell v. State, 360 So.2d 1206, 1215 (Miss.1978). The Bell court held that there is a rebuttable presumption that the trial judge properly performed his duties. Id. The sentencing order in this case stated that "a jury of twelve citizens was duly selected as provided by law." The jury oath is a part of selecting a jury as provided by law, and it can be presumed that the jury was sworn in from the previously mentioned statement in the sentencing order. Thus, the rebuttable presumption that trial court properly performed its duties has not been overcome. Therefore, this assignment of error is without merit.

5. The trial court erred in allowing Roy Ray to testify in rebuttal.
¶ 31. Dunigan maintains that Roy Ray was not listed as a witness for the State, was not disclosed to the defendant during discovery, and was not referred to in voir dire or opening statement. Dunigan maintains that Ray's testimony was not brought in to counter his testimony but was used simply to direct the jury's attention away from Robby Cain who disputed the testimony of State's witnesses, Uriegas and Ciara.
¶ 32. The State counters that there was no objection to this testimony, and therefore, the claim is not before this court.
¶ 33. Roy Ray testified that Dungian, Ciara, and Uriegas brought the blue pick truck to his home so that he could pull out some speaker wires. Ray stated that it was an hour before dark when Dunigan, Ciara and Uriegas came to his house. Ray also testified that he did not help Dunigan push a car up the hill on the day of theft like Dungian alleged that he did. Ray further testified that he had given Dunigan a water cooler the evening that Ciara and Uriegas were arrested for theft of the anhydrous ammonia.
¶ 34. To the contrary, Dunigan testified that he had been at his father's house until one in the morning on the night of October *1072 15, 2002, and that he had never seen the water cooler before. Dunigan further testified that on October 15, 2002, Roy Ray helped him push a car up a hill.
¶ 35. We agree with the State. Since Dunigan did not object to Roy Ray's testimony at trial, this assignment of error is procedurally barred. Procedural bar notwithstanding, we briefly consider this issue.
¶ 36. The trial court has the sole discretion to allow rebuttal evidence or testimony. McGaughy v. State, 742 So.2d 1091, 1003(¶ 6) (Miss 1999). Therefore, on appeal, we review the ruling for an abuse of discretion. We find nothing in the record which indicates that the judge abused his discretion in allowing Roy Ray to testify as a rebuttal witness. This assignment of error is without merit.

6. The sentence was the result of bias, prejudice or other arbitrary facts
¶ 37. Dunigan contends that the sentence of ten years was a direct result of the trial judge's bias from the prosecution's improper cross-examination of him. Dunigan maintains that he was given the maximum number of years to serve in prison because he chose to go to trial instead of accepting a plea.
¶ 38. The State submits that the record does not support a claim that the sentence was punishment for having demanded a trial. The State points out that the trial judge clearly indicated that he was not increasing punishment because of Dunigan's demand for a trial.
¶ 39. The record indicates that the trial judge told Dunigan that he wished he would have come forward and admitted his involvement. However, the judge also recognized Dunigan's absolute right to a trial. Accordingly, we find no merit in this issue.

7. The verdict should be reversed for cumulative errors
¶ 40. Dunigan asserts that any one of the errors alleged is sufficient for reversal of his conviction and sentence. Dunigan contends that if we should agree, then his conviction should be reversed based upon the cumulative effect of errors that independently would not require reversal.
¶ 41. This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. Genry v. State, 735 So.2d 186, 201(¶ 73) (Miss 1999) (citing Jenkins v. State, 607 So.2d 1171, 1183-84 (Miss.1992)). However, where "there was no reversible error in any part, there is no reversible error to the whole." Genry, 735 So.2d at 201 (quoting McFee v. State, 511 So.2d 130, 136 (Miss.1987)).
¶ 42. We find no error in any of the single issues cited by Dunigan. Therefore, there can be no error when they are viewed in toto. Consequently this assignment of error has no merit.
¶ 43. THE JUDGMENT OF THE FRANKLIN COUNTY CIRCUIT COURT OF CONVICTION OF THEFT OF ANHYDROUS AMMONIA WHILE IN THE POSSESSION OF A FIREARM AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FRANKLIN COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Rodney Foster testified that when he arrived at Seale's farm, he noticed an orange water cooler sitting beside one of the small anhydrous ammonia tanks. A hose extended from the tank to the cooler. Vapors were emanating from the cooler. He turned off the valve on the hose to stop the flow of the anhydrous ammonia going into the cooler.